and may it please the court my name is Russell Petty and I'm representing the the plaintiff and appellant dr. Gordon Osborn the I don't think that there's any serious dispute that by the time he filed his disability claim it would have been extremely risky to dr. Gordon's health for him to attempt to resume practice as a as an oral surgeon and is typically the case in disability cases the there are a number of factors that go into creating that danger one of them is of course the COVID pandemic a second factor is dr. Osborn's pre-existing conditions his hypogamma the immune deficiency and his chronic asthma well then he say that if he had gotten the PPE equipment he would been happy to reopen well you know there there are three or four responses to that and let me sort of walk down them one of them is that you know that statement was directly related to the period of time in May of 2020 which is prior to dr. and it's you know five six months before he actually decided to file a claim for for disability benefits that's that's argument point number one point number two remember this is a summary judgment case and we've got a statement by dr. Dougherty you know a medical professional who states that that the dr. Osborn was disabled at at that point and in addition your honor you know I think that people didn't necessarily appreciate the risks of the of the pandemic when it first happened I I remember in in late February of 2020 I had a status conference in front of Judge Dean Fragerson it was all very informal we're in chambers you know we're all talking about this so this COVID he asked me what I thought of it and I says your honor it's the it's the flu with better public relations that's you know that's what people thought and the realization as to how serious the COVID was going to be and the risk to the health that was going to occur mr. Petty I need you to help me with some timeline issues that are a little fuzzy to me did dr. Osborne's doctors recommend that he discontinue his practice yes your honor and when was that the dr. couch who his immunologist stated she testified at deposition that she told all her patients with hypogamma the compromised immune system that they should be they should stay home during the during the pandemic but now he did not remember that he did not remember that and that's also not not in her notes but she did testify at deposition that that that's what she says it's efficient even on a summary judgment standard where she says well I person and this specific person doesn't have any recollection of me telling him well you know your honor I I think it is especially because dr. Daugherty also said at deposition that he told dr. Osborne something along the lines of you know people can make their own decisions but you've got you've got bad lungs and you're high risk the and mr. Petty I'm sorry I still need an answer to mine when was that what month what no that would have been the day before the dr. Osborne closed his office so that would have been in March of 2020 yeah the at any rate and you know the the fixation that the the court below had on well you know he's got to be told before he goes out on disability I mean I've done hundreds of these cases that's typically not the case typically the case is is that the you know the claimant decides he can't you know work anymore and and and you know leaves work forgive me but I appreciate your experience but it's not part of the record of this case is it your experience no I'm sorry your honor no no my experience is not part of the record but but I but I do think that it's I can't say that it's it's typical for the doctor to weigh in on whether somebody is disabled after the fact I don't think there's any legal requirements certainly no policy requirement that the position weigh in you know prior to somebody's somebody leaving office I I think that's sort of a you know fixating that on that I think takes us away from from the real issue which is what the doctor's opinions are and we've got two physicians here whose opinions are that dr. Osborne was disabled because of his high-risk situation in was it just a high-risk situation or was it high-risk situation and inability to get PPE well you know I sort of you're working back into to where I to where I started your honor I mean there's there are there's the the fact that he's high-risk his conditions would have made it more likely for him to contract Cove it and that make it more serious if he did contract it the later on he had a pulmonary embolism that adds to the danger after the after the pulmonary embolism is is the argument your clients argument that even with PPE it then wasn't safe for him to continue his business practice as well well I don't think it was ever safe for him to continue in his business practice and judge Seaborg in in the Downs case you know specifically addressed the issue you and I'm argued well you know this pediatrician could have protected herself with with PPE and judge Seaborg cited to medical studies standing for the proposition that no you know PPE might help you a little bit but it's not you know a you know full armor against this okay so really with or without it starting in March the argument is that he that he was totally disabled but at any rate and also when you consider the the risk factors your honor I mean it's a you know working as an oral surgeon in you know you're you're working in close proximity to the patient's unmasked mouths with a you know a cloud of you know aerosol cloud of the patient's blood and saliva it's it is it truly very risky and the failure to get PPE and the point is is it which of those factors is more important you know the relation of those factors to another you know would he you know you pulled one out I mean that those that's an extremely miss actual issue mr. Petty I explained to me I'm a little I just I'm trying to get this timeline in my in my head so dr. Osborne chose to close this practice in June of 2020 because he could not obtain adequate PPE is that correct at that point he thought if I get adequate PPE I'm gonna keep working that is correct your honor okay and it wasn't until August when he had the pulmonary embolism now at that point was he explicitly told and does he remember he was told you shouldn't work anymore I I don't think that he had any conversations I mean he wasn't working there's there's really no reason to you know for a doctor to say you know you should stop working when he he hasn't worked for some time so so no there's there's nothing in the record and I frankly that there was anything in the record and then it's my understanding that he was able to start getting like more consistent I guess PPE in August is that correct no your honor okay explain miss Craven testified that she had attempted back in March to obtain a variety of PPE masks booties gowns gloves face shields she testified at deposition that sometime in either late July or early August she had received some masks but there's no evidence that the full suite of PPE which was necessary to to protect a dentist working in that environment was ever available at any time in the record and so that's really one of the the factual errors that the district court made and let me just make sure I understood you earlier did you earlier state that even if he had everything all the PPE given his pre-existing conditions he still should or would not have returned to work or should not have been working the risks were too high and and and I know that Dr. Dougherty and in his conversation with Unum's doctor and Tiki you know told him look he was disabled and even if he wanted to go back to work he shouldn't have gone back to work and then you cannot shift gears for a second to your claim under the BOE policy the I understand how you might have a claim until mid-june when he finally closed his office but not after that what's the basis for the claim after he fully closed down the office well you know you still have expenses that relate to shutting down his business even after the business physically closes and when you think about it your honor I mean the you know the purpose of purchasing the you know business overhead coverage is to you know to pay bills like that in the event you become disabled and the notion that well you're disabled and so therefore your expenses aren't going to be covered sort of defeats the purpose of having that the in the uno case which which applied to Oregon law the the position closed his practice and continued to you know do some collections and you know respond to you know to inquiries but was with no longer treating patients closed his medical practice and and the court held that those were still recoverable expenses under the BOE policy because it defined operation broadly I mean operation operated this whole the judges just low decision turned on the definition of operation of your business being the treating of patients operation of your business is not defined in the policy under California law that term should be defined broadly in order to meet the reasonable expectations of the insured and and and so the as long as it's a regular operation that's necessary to to carry on the business it should be it should be covered what what were the regular operations that were happening after after your client stopped seeing patients what the there were some there were some collection activities there there were some you know responding to to patient inquiries responding to inquiries from from from other you know but wasn't that all in the period between March and June you know I you know I suspect your honor that the great bulk of the expenses we're talking about were incurred during that period okay I think you're right about that I think they're they're actually I'm not sure there were any invoices for that we're and and so even though we're here on summary judgment if there was nothing in the record indicating any expenses after mid-june or so then your adversary would be entitled to summary judgment for that period after that yes well well I mean the summary judgment was granted over the period from March I'm saying we understand but assuming that we were to agree with you on the period from March to June is there anything in the record that shows any expenses being incurred after mid-june you know your honor I would just have to look at that I mean there's there's several hundred pages of invoices as I as I sit here stand here I can't recall any of them being generated after after June when the office was was was actually closed but but but I just can't say that when I certainly it's just not an issue that arose below and you know so I just you know the till the court pointed it out it never really considered that council I don't want to cut into your time too much but I do want to ask you about Paul Revere versus Ward are you familiar with that case I lost that case at the Ninth Circuit your okay then why is this not why shouldn't we treat it the same the I'm sorry your honor I don't I don't understand the question why shouldn't we treat dr. Osborne the same way the his case the same way that we treated Paul Revere versus Ward oh I'm sorry your honor I'm thinking a different case I'm not familiar with Paul Revere versus Ward okay the universe is ward okay thank you I'm sorry I thought you were gonna say that because you lost once and I started we should be fair that would be a wonderful wonderful result your honor the so I mean I'm sorry the court's question is so Paul Revere versus Ward was a case where a plaintiff was an attorney the attorney was being looked at for ethical violations so he voluntarily okay not practicing yes I'm sorry that that case is in the record well you know the legal disability cases are they all have one thing in common Ward is one of them and and I'm sorry I should have recognized the case Ward is Ward is one of them because all of those insureds are suffering from some legal reason why they can't continue to to do their work in Ward's case it was because of his legal problems dr. Osborne here has no legal problems those cases are all inapplicable because they only apply to people who have some legal infirmity that prevent them from from working I will reserve the if there's no further questions I'd like to reserve any other minute I have remaining okay yeah I'll put two minutes on the clock for your rebuttal thank you good morning again your eyes may it please the court I'm Dan McGuire here to represent Paul Revere we would respectfully request that the court affirm the lower court judgment because all material facts are undisputed and the district court properly interpreted the contract as a matter of law so the district court basis decision on part on quote no doctor recommended that mr. dr. Osborne stop work but isn't that belied by the record no your honor well there there was testimony that was just referred to about how one of the physicians said she recommended to all her patients they stopped work in this situation he didn't expressly remember that but that doesn't mean if the jury credited her testimony and applied it to him that there wasn't a jury issue was there there was no jury issue and here's why your honor this is dr. Kottrue and she is the immunologist so he saw dr. Kottrue on March 8th he continued to work full-time before during and after that visit dr. Kottrue notes don't contain any restrictions or limitations in fact his conditions were to control dr. Kottrue's advice that you just reiterated was general advice given to all her patients which basically amounted to be safe out there and if you need a note for your employer please come back and see me and I'll give you one here it's interesting to note that dr. Osborne didn't file a disability claim till eight months after that and he never went back to her to get an attending physician statement in the way that she suggested so dr. Osborne had practiced for decades carrying the same diagnoses including through the flu seasons and I hope that answers your question your honor on dr. Kottrue but I'd be happy to elaborate well now wasn't there also in Paul Revere's own notes an indication that Osborne was quote advised not to perform dentistry and oral surgery due to COVID pandemic close quote and he had no PPE and that's really the heart of the case your honor is on a causation analysis with the policy definition of disability the inability to work must arise from an injury or sickness there's that causation between the injury and sickness and the reason he didn't work and in this case the reason he didn't work didn't have anything to do with any doctor's advice or anything else other than the dental board suggesting to its members that they restrict their treatment to emergent procedures the I'm searching for it now but isn't there a gloss on that under California law so it's not quite as direct a causation issue as you're indicating I'm sorry I don't have that citation right in front of me but it's at the definition of disability yes your honor refers may yes yes so in California a particular part of that policy is given a certain definition by reason of the California Department of Insurance and it means that total disability means that because of injury or sickness the insured is unable to perform the substantial and material duties of his or her occupation with reasonable continuity in the usual and customary way however that part of the definition isn't what's at issue here what's at issue here is the causative link between an injury and sickness on the one hand and the reason that dr. Osborne is not working if he's unable to work due to a reason other than injury or sickness then the causation argument fails he's got the burden of proof he hasn't shown that no benefits are payable what about after he suffered a pulmonary embolism at that point this is in August now of 2020 he had already closed his practice permanently for reasons obviously unrelated to the pulmonary embolism he would later experience but that was treated and on August 4th of 2020 he reported into the doctor to follow up on that and the doctor said that he was clear and the the company found that he was unable to work for a certain amount of time because of that 27 days I was but because that didn't exceed the elimination period of 30 days no benefits were payable so the I'm sorry your honor were you gonna ask me something else no good okay so the material factual question really just comes down to an interpretation of the contract it's an issue of causation if and the question is why did dr. Osborne stop working if the reason he stopped working was because he was injured or sick and he couldn't do it then that's what this policy pays benefits for but if the answer is he left work and didn't return to work because of a reason other than injury or sickness then there's no benefits payable because there's no factual disability so but my understanding correct me if I'm wrong is it sort of in between here because he had even before the pulmonary problem he had a medical condition that made him so susceptible to death if he contracted kovat that he was advised not to take a risk at least not without getting very full PPE so wasn't it a combination of the outside situation and the inside situation no your honor and here's why so we know that he had these conditions for decades he practiced for decades full-time before during and after the visit to dr. conference before kovat it was before kovat that's right on March 8th so at March 8th he leaves the office of dr. Kott true and he doesn't say well dr. Kott you just told me to stop working it's too dangerous let's cancel all the patients he went back to work and work for another so another weeks full of patients then on doc and dr. I just want to mention dr. Daugherty since it came up in the courts questioning earlier he saw dr. Daugherty on March 12th and that was the last day he saw patients but he was planning to see patients on that next Monday March 16th until the AOMS had suggested that procedures be restricted to emergency procedures that's when he came in he told his office people cancel all the patients that we don't have any PPE we can't do it safely and now dr. Daugherty first opines that dr. Osborne is unable to work as of March when in November so it's a hindsight analysis he's had two office visits at least since then between the time he left work and the time he signs the attending physician statement neither of them refer to any and then he's going to sign an APS to essentially rewrite history and say he couldn't work since March well why don't you tell him that and if you did why don't you put it in your notes but these these all sound like disputes that could be decided at trial I'm not sure that that that any of what you're saying means that summary judgment is appropriate I guess are you is your argument essentially that because he went back to work after the dr. Kott true appointment that that as a matter of law basically she could not have told him stop working at that point in time he couldn't have been thinking about it debating about it trying to figure out what to what to do well the the answer your honors question is it was proper for summary judgment because there's no dispute that the reason he left work had nothing to do with anything dr. Kott true or any other doctor said instead it had to do with advice given to him by the board and the reason he didn't return to work was because he couldn't get the PPE so the advice by the dental board to restrict to emergent procedures is not an injury or sickness the inability to get PPE due to a supply chain issue is not an injury or sickness when he decided to close the business permanently three months after he first left work sell his house move away try to sell his equipment that was not an injury or sickness that was a self-created barrier to returning to work because at that point he can get PPE at this later point right so whether he actually got the PPE in June July August September I mean it doesn't really matter it's not a material fact because the reason he didn't work was because he couldn't get the PPE and the reason he closed was because he didn't know when he could so counsel what is the expectation then for dr. Osborne given that you're saying look not being able to get the PPE and being in a pandemic is not enough because it's not injury and it's not sickness so should he have been risking I mean they were pretty certain everybody was pretty clear about the fact that given his hypogamma he was very susceptible to getting very sick if he if he contracted kovat so what what is someone in his position to do to be able to get coverage and be safe he gets coverage under this kind of policy if he's injured or sick and that causes them not to work if there's a pandemic if the building burns down if there's a mold infestation in the building those are all reasons why he can't go to work either but those are not risks that the policy insured against to answer your kovat question the remedy is to do it what he did to play it safe to be careful he went into the office every day it wasn't like he was afraid to get out of the house but then he submitted an application for a PPP loan like many many parties did at the time and then he submitted an application for to wave or I forgot the word but to forgive I'm sorry that loan so that that was that was what the situation was that presented so assuming for the sake of argument that we thought there was a jury question under the first policy where does that leave the second policy so the causation issue would apply to both policies and your honor's question right I'm saying assuming arguenda we think the causation issue was not sufficiently resolvable on summary judgment if the court were to reach that issue then the is whether covered monthly expenses are payable covered by the expenses are ordinary and necessary in the operation of the business the business was treating patients he had treated no patients since March 12 of 2020 the case law says that winding up expenses is not running an office operation means ongoing his people were with him for years did he want to cut him loose and send him on the street no was that commendable yes was it an operation of business no their job was administrative in nature keep the clock to keep the patients informed when they call in apply for the PPP loan and do the administrative aspects in administrative aspects of the office I see I have three minutes left I'm not going to give them to mr. Petty but but I will please invite any of the three your honors to ask me any questions you might have so that I can direct my comments to any concerns I don't think we have any other questions for you if there's anything else you'd like to tell us you've got three minutes left otherwise we'll happily accept the back okay well I'll take I'll take one of the three perfect so in conclusion we would respectfully request your honors to uphold and affirm the lower courts judgment for the following reasons plaintiff has the burden of proof that he's unable to work because of injury or sickness it's a causation analysis the reason he left work was because of advice he received from the dental board not an injury or sickness the reason he didn't return two to three months after that was because the PPE supply chain was interrupted supply chain interruption is not an injury or sickness the reason he didn't return to work after the end of May or beginning of June was because he voluntarily walked away in his own words from the practice voluntary closure of a business is not an injury or sickness so because under those facts which are no benefits are payable and we would request respectfully your honors the firm thank you very much thank you first up thank you your honor so for first judge Thomas I mean what was exactly correct I mean when she pointed out that mr. McGuire's very excellent argument was really more like a jury argument than it was anything else I mean we have a summary judgment case that that dr. Osborne was not medically disabled in spite of the fact that we've got two physicians who state very clearly that they believe that he was disabled because of his medical condition pulmonary embolism the the immune deficiency and the chronic chronic asthma and and so you know the reasons when when when asked well you know why is this still a summary judgment case it's well you know I mean he accused Judge Dougherty of rewriting history when when he stated very firmly in the attending physician statement in November that that he believed that dr. Osborne was disabled because of his medical condition and I submit that that is a jury question which should have gone to the jury and should not be decided on them on summary judgment I'm going to raise an issue which which is in my papers it's sort of search sort of occurred to me later we I spoke at the beginning of my argument as to how there are a number of factors involved and which is more important than the other if you look can I go back just one second to the Dougherty issue and I'm sorry that I don't have the citation to the record tell me exactly what he said or recorded in his notes the if you're talking about his November of 2020 notice yes he said that that due to well I have the well what he basically said patient advised this is in the record it to we are 262 patient advised not to perform dentistry or oral surgery due to COVID pandemic he is a high-risk individual due to age and labile extrinsic asthma and just so I'm clear that is a statement of what he said then or what earlier that is that is what he wrote in the in November of 2020 what he testified that he told dr. Osborne back in the time is I'm not going to make any decisions for you but you've got bad lungs and you're high-risk all right that was his testimony of what he said can I can I have 30 seconds just to make just take yeah you can take 20 more seconds go ahead the AD&D policies this has addressed those in numerous cases they haven't triggered by an accident and they all have language excluding other causes from the accident the accident has got to be the sole cause of the injury if Paul Revere wanted to have this policy where the sickness or injury is the sole cause and we shouldn't look at external factors they should write that into the policy they failed to do that and Paul Revere is attempting to have this court write an exclusion for a policy when that exclusion is not in the policy itself okay if there are any further questions I'm happy to take them I appreciate the court's indulgence and in letting me run run a little over thank you all right thank you thank you very much mr. Petty thank you mr. McGuire for your helpful arguments this morning this case is submitted and we are adjourned for the day thank you
judges: THOMAS, ALBA, Rakoff